## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MELISSA A. NIBLETT,          :    Civil No. 1:21-CV-1345
                          :
        Plaintiff,            :
                          :
        v.                   :
                          :
EXP REALTY, LLC, *et al.*,      :
                          :
        Defendants.       :    Judge Jennifer P. Wilson

## <u>MEMORANDUM</u>

Before the court are three motions for summary judgment filed by Defendants eXp Realty, LLC ("eXp"), Colin Cameron ("Cameron"), and Nicole Butcher ("Butcher"), Doc. 221; Laury O'Neill ("O'Neill"), Doc. 222; and Jennifer Hommerbocker ("Hommerbocker"), Doc. 224, respectively. Plaintiff Melissa Niblett ("Niblett") alleges that eXp and eXp realtors Cameron, Butcher, and O'Neill ("eXp Defendants") violated the Pennsylvania Unfair Trade Practices and Consumer Protections Law ("UTPCPL") during the sale of Hommerbocker's home to Niblett. (Doc. 72.) Niblett also alleges state law fraud, fraudulent concealment, fraudulent inducement, and concert of action claims against all Defendants. (*Id.*) For the reasons that follow, the motions will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

On May 1, 2019, Niblett agreed to purchase a townhome from Hommerbocker, located at 149 Maple Drive, Hanover, Pennsylvania, for $194,500. (Doc. 231, p. 20; Doc. 72, ¶ 1.)[2]  Real estate agent Colin Cameron represented Niblett and Laury O'Neill represented Hommerbocker.  (Doc. 231, ¶ 7; Docs. 231-3.)  Both Cameron and O'Neill are employed by eXp Realty.  (Doc. 231-3.) Defendant Nicole Butcher, another eXp realtor, accompanied Niblett on a walkthrough of the home, and received a commission for this activity.  (Doc. 231, ¶ 8.)  Niblett argues that eXp, Cameron, and Butcher are dual agents required to represent the interests of both Niblett and Hommerbocker, by virtue of a dual agency addendum entered in to by Niblett, Cameron, Hommerbocker, and O'Neill. (Doc. 231, pp. 20–23; Doc. 231-6.)  Niblett also argues that Butcher represented her and earned a commission for the representation.  (Doc. 231, ¶ 8.)

149 and its neighbor, 151 Maple Drive, are connected, such that it is one building comprised of two residences.  (Doc. 232, p. 9.)  Hommerbocker testified

---

[1] The factual recitation below is drawn from Defendants' statements of material fact, Docs. 223 and 226, as well as the numbered portion of Plaintiff's responses to those documents, Docs. 231 and 232.  Plaintiff included a "preliminary statement" in both of her responses which outlines the factual scenario in a narrative format and makes legal argument.  Because this is contrary to this court's Local Rules, the court will not consider the preliminary statement and will consider only Plaintiff's responses to Defendants' numbered statement of facts.  *See* Local Rule 56.

[2] For ease of reference, the court uses the page numbers contained in the CM/ECF header.

at her deposition that her neighbor learned of "problems with 'the backfilling of the home,' and that pillars were needed to 'shore up the foundation[,]'" in 2015.  (*Id.* at 13.)  Keystone Foundation was contracted to perform the repairs; however, it is disputed whether they completed the repairs and the sufficiency of the repairs. (*Id.*)  Hommerbocker argues she completed repairs on her side of the property while her neighbor did not, but Niblett argues that both Hommerbocker and her neighbor discontinued repairs and eventually took a settlement instead of completing the repairs.  (*Id.* at 13, 14.)

To support her argument that Hommerbocker did not complete the repairs and knew she did not complete them, Niblett points to a document from Residential Warranty Company, LLC, ("RWC") dated September 16, 2016,[3] which shows a settlement between Hommerbocker and RWC regarding the foundation issue.  (Doc. 231-8.)  Hommerbocker testified that she provided this document to her real estate agent, Laury O'Neill, on April 30, 2019.  (Doc. 232, p. 16.)  Niblett claims she never received this report.  (*Id.* at 17.)  To further dispute Hommerbocker's assertion that she completed the repairs on her side of the property, Niblett also references a report she styles "the Fertich Report" which is a report commissioned by Freedom Mortgage Company and completed by Jeffrey B.

---

[3] Niblett refers to this document as "the RWC Report."

Fertich, a structural engineer. (*Id.* at 17.) This report, dated November 6, 2023, provides that:

> Keystone [Foundation Repair] provided a partial repair in 2016 that was interrupted at the insistence of the two homeowners. . . . On the current visit, Keystone along with myself, confirmed that the home is continuing to settle. We have confirmed that the original settlement had not been remediated due to efforts of the homeowners at that time, no other repairs were made by others that we may not have been aware of.

(Doc. 231-11, p. 2.) Clearly, since the Fertich report was completed on November 6, 2023, Hommerbocker could not have had this report at the time of sale.

Hommerbocker claims she provided all documents she possessed relating to the foundation repairs to her realtor. (Doc. 226, ¶ 30.) Around the time of the sale of the property from Hommerbocker to Niblett, Hommerbocker emailed Keystone Foundation Repair checking on the extent of the repairs to the property, and Keystone responded with the receipt of the repairs, showing twelve of twenty piles installed and eight piles not installed at the direction of Hommerbocker's neighbor. (Doc. 226-7.) Hommerbocker contends she honestly believed the repairs on her side of the home were completed. (Doc. 232, p. 18.) Niblett contends that Hommerbocker knew the repairs were not completed on her side due to her taking a settlement and emailing the RWC report to O'Neill shortly before the completion of the sale to Niblett. (*Id.*)

Hommerbocker prepared a seller's disclosure form, in which she checked "yes" next to the box that she was "aware of any past or present movement, shifting, deterioration, or other problems with walls, foundations, or other structural components?" (Doc. 226-9, p. 4.)  She did not explain what these issues were in the section provided to do so and claims she "honestly must have missed that section[.]"  (Doc. 232, p. 21.)  In the seller's disclosure, Hommerbocker also disclosed she was aware of "sliding, settling earth movement under you, substance sinkholes, earth stability problems that have occurred on or affect the property[.]" (*Id.*; Doc. 226-9, p. 8.)

Niblett admits she reviewed the seller's disclosure with her realtor, Cameron.  (Doc. 232, p. 22.)  Niblett inquired further about the box checked "yes;" however, her realtor stated "everybody in the development has cracks in their walls, it's not a big deal."  (*Id.* at 22.)  Niblett never requested further information about this disclosure.  (*Id.*)

Niblett hired Top Dawg Inspections to inspect the property prior to sale, but did not provide the inspector with the seller's disclosure form because she expected the inspector to have that information.  (*Id.* at 23.)  The inspector noted some issues with the roof, which Hommerbocker had disclosed, and also noted a moldy smell in the basement.  (*Id.* at 24.)  Niblett did not seek further testing on

the issue in the basement. (*Id.*) Niblett did discuss the inspection report with her realtor. (*Id.* at 25.)

Hommerbocker points to provisions of the Agreement for Sale, in which Niblett agreed that she had the property inspected and agreed to purchase the property "in its present condition[,]" as well as a clause releasing Hommerbocker from claims "aris[ing] from defects or conditions on the property[,]" except the release did not deprive Niblett of the right "to pursue remedies that may be available under law or equity" for violations of seller disclosure laws. (*Id.*) The agreement of sale also included an integration clause which provided "[t]his Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning the sale." (*Id.* at 25, 26.) Hommerbocker notes that Niblett did not "insist on an Agreement of Sale that incorporated the Seller's Disclosure Statement, but Niblett argues she relied on the expertise of Cameron in whether or not to "make such an insistence." (*Id.* at 26.)

Hommerbocker contends Niblett never inquired of Hommerbocker regarding the structural issues, never inquired about the blank lines on the seller disclosure statement, and never hired a structural engineer to inspect the property despite Hommerbocker noting on the disclosure form that there were structural issues. (*Id.* at 28.) Niblett responds that she relied on her realtor for advice regarding these

6

issues and asked them about the issues. (*Id.*) Niblett did not contact her realtor regarding the foundation issues until thirteen months after she moved into the property and her neighbor complained of their first floor sinking. (*Id.*)

Hommerbocker contends that Niblett has no personal knowledge regarding conversations between Hommerbocker and the eXp Defendants during which they agreed to hide the defects on the home. (*Id.* at 29.) Niblett disagrees and points to a timeline Hommerbocker had provided to Niblett prior to this lawsuit in which Hommerbocker advised she asked O'Neill if O'Neill had shared "the additional documents" and O'Neill said no, the defect is on the disclosure, and she would send further documentation if asked. (*Id.* at 29; citing Doc. 73-1, p. 2.)[4]

In order to pay the purchase price of the home, Niblett obtained a 0% down mortgage from the United States Department of Agriculture ("USDA"). (Doc. 223, p. 23.) Niblett argues that she also "execute[d] a promissory note to personally guarantee the loan for a total indebtedness of $194,500 debt." (*Id.* at 24.) The sale closed on June 7, 2019, at which time Defendants contend Niblett paid $0.25 out of pocket. (*Id.* at 25.) 25.) Hommerbocker provided a "seller's assist" of $8,000, which Niblett argues is offset by Hommerbocker's failure to repair "all animal-related damage to railings, cabinets and corner drywall[,]" as

---

[4] Doc. 73-1 is an affidavit attached to the amended complaint, in which Niblett appended a timeline Hommerbocker provided via Facebook. (Doc. 73, ¶ 8.)

agreed in sale agreement. (Doc. 231, p. 26; Doc. 231-3, ¶ 756.) Niblett claims she suffered other "damages, debits, and credits showing 'ascertainable losses' of $128,000[,]" and cites to Doc. 231-16, referred to by all parties as "Exhibit 16," which appears to be a list of costs and credits Niblett accrued throughout the process of purchasing the property and the instant litigation. (Doc. 231-16.)

Niblett occupied the property for around one year before moving out and leasing the property to a friend. (Doc. 231, p. 26.) Niblett ceased paying the mortgage at some point and foreclosure proceedings began. (Doc. 232, p. 31.) On January 16, 2024, Freedom Mortgage Corporation discharged the mortgage on the property. (Doc. 231, p. 26.) Niblett argues that prior to the mortgage being discharged, she had to abandon the property because she could not afford to repair defects. (*Id.* at 27.) Niblett relies on emails between her counsel and Freedom Mortgage's counsel showing that Freedom decided to release the mortgage because there was no value to the home. (*Id.* at 27, 28.) Niblett additionally points to Form 1099-C Cancellation of Debt issued by Freedom Mortgage showing a discharged debt of $86,252.91. (*Id.* at 28, 29.) Emails between Niblett's counsel and Freedom Mortgage's counsel show that Freedom Mortgage had received funds from the USDA to pay off the mortgage and that the account balance was zero dollars. (Doc. 226-15, p. 6.)

Niblett eventually sold the property for $78,000, with the buyer paying $70,822.01.  (*Id.* at 30.)  In a letter to Magistrate Judge Susan Schwab, who handled the discovery disputes in this matter, Niblett stated she made $27,045.14 in mortgage payments.  (Doc. 231, p. 30.)  In the same letter, Niblett stated she paid $7,428.73 in moving expenses.  (*Id.* at 31.)   Thus, Defendants conclude that Niblett actually realized a $36,348.14 profit in this transaction.  (*Id.* at 31.)  Niblett disputes that she made a profit and argues she has suffered other damages, such as legal costs and diminished credit score.  (*Id.* at 31, 32.)

Niblett filed her initial complaint on August 2, 2021.  (Doc. 1.)  The initial complaint named the instant Defendants as well as CrossCountry Mortgage Company, Inc., Rogers Appraisal Service, Inc., and Top Dawg Inspections.  (*Id.*)  The court granted motions to dismiss filed by all Defendants without prejudice, dismissing the complaint in its entirety without prejudice and dismissing with prejudice count VI, negligence, as well as count IX, styled "respondent superior and vicarious liability."  (Doc. 69.)

Niblett filed an amended complaint on October 24, 2022.  (Doc. 72.)  All Defendants again moved to dismiss the complaint.  (Docs. 83, 84, 85, 86, 87.)  Niblett did not file a brief in opposition to the motions to dismiss filed by CrossCountry and Top Dawg Inspections; therefore, the court granted the motions and dismissed these defendants from the action.  (Doc. 117.)  After the remaining

motions were fully briefed, the court held oral argument on July 12, 2023. (Doc. 120.) After oral argument, the court granted Defendant Rogers Appraisal motion to dismiss with prejudice and dismissed Rogers Appraisal from the action. (Doc. 124.) The court also granted in part and denied in part the motions filed by eXp Defendants and Hommerbocker. (*Id.*) Specifically, the court granted eXp Defendants and Hommerbocker's motions to dismiss with prejudice regarding count VI negligent misrepresentation, count VII unjust enrichment, and count VIII violation of the Real Estate Seller Disclosure Law. (Doc. 124.) The court denied the motion with respect to counts I through V. (*Id.*) All remaining defendants, eXp, Colin Cameron, Nicole Butcher, Laury O'Neill, and Jennifer Hommerbocker answered the amended complaint. (Docs. 128, 129, 130.) eXp Defendants also filed a crossclaim against Defendant Jennifer Hommerbocker. (Doc. 127.) The currently pending claims are as follows: count I violation of the UTPCPL against eXp, Cameron, Butcher, and O'Neill, count II fraud against all Defendants, count III fraudulent misrepresentation against all Defendants, count IV fraudulent inducement against all Defendants, and count V concert of action against all Defendants. (Doc. 72, pp. 28–37.) After the remaining Defendants answered the amended complaint, a multitude of discovery issues ensued, largely addressed by Magistrate Judge Susan E. Schwab. (Doc. 146.)

eXp, Cameron, and Butcher filed a partial motion for summary judgment and supporting papers on February 28, 2025.  (Doc. 221.)  Laury O'Neill filed a motion for partial summary judgment on February 28, 2025.  (Doc. 222.)  Jennifer Hommerbocker filed a motion for summary judgment on February 28, 2025.  (Doc. 224.)  Nibblett filed answers to statements of fact on April 4, 2025.  (Docs. 231, 232.)  She filed briefs in opposition on April 6, 2025.  (Docs. 233, 234, 235, 236.)[5] eXp, Cameron, and Butcher filed a reply brief on April 18, 2025.  (Doc. 239.) Hommerbocker filed a reply brief on April 18, 2025.  (Doc. 24.)  Accordingly, all motions are ripe and ready for disposition.

### JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. § 1332 because the parties have complete diversity and the amount in controversy exceeds $75,000.[6]  Venue is appropriate under 28 U.S.C. § 1391 because all acts or omissions giving rise to the claims occurred in the Middle District of Pennsylvania.

---

[5] The court notes that Docs. 235 and 236 are styled as an "amended brief in opposition" but do not appear to materially change the prior briefs.  (Docs. 235, 236.)  The court refers to the amended briefs, Docs. 235 and 236, as they were the final briefs filed by Niblett.

[6] Niblett is a citizen of Maryland.  (Doc. 72, ¶ 1.)  Defendant eXp Realty, LLC is located in Pennsylvania, and Cameron, Butcher, O'Neill and Hommerbocker are citizens of Pennsylvania. (*Id.* ¶¶ 2, 3.)

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

eXp Realty, Cameron, Butcher, and O'Neill move for partial summary judgment regarding damages on the UTPCPL claim and full summary judgment on the state law fraud claims. (Doc. 227, p. 2, 3.)[7] Hommerbocker moves for summary judgment on the state law fraud claims against her. (Doc. 228, p. 1.) The court will begin with Hommerbocker's motion and then proceed to eXp Defendants' motion.

### A. Hommerbocker's Motion

Hommerbocker raises three arguments as to her liability regarding the fraud-based claims against her. First, Hommerbocker argues that Niblett cannot establish that Hommerbocker made a material misrepresentation or concealment and knew it was false with the intent to mislead by pointing to Hommerbocker's belief that the structural repairs had been completed at the time of the sale. (Doc. 228, pp. 8–10.) Second, Hommerbocker argues that Niblett cannot establish that Niblett justifiably relied on a material representation because the information that Hommerbocker provided "made it readily apparent [she] disclosed issues with the structure and soil." (*Id.* at 13.) Third and finally, Hommerbocker argues that she is entitled to

---

[7] Although Defendant O'Neill is represented by separate counsel, she filed a brief joining in totality the other eXp Defendants' briefing. (Doc. 229.) Therefore, the court includes her in the definition of "eXp Defendants."

judgment[8] because the agreement for sale contains a provision that released her from claims relating to defects on the property.  (Doc. 228, p. 14.)  Niblett does not respond to any of these arguments.  Rather, she repeats arguments made in opposition to eXp Defendants' arguments regarding damages under the UTPCPL.  (Doc. 234, p. 16.)  Because it is dispositive, the court will address the third argument regarding the release contained in the seller's contract.

The Standard Agreement for the Sale of Real Estate entered into by Niblett and Hommerbocker on May 1, 2019, provides:

**RELEASE (9-05)**

**Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands**, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other word-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

---

[8] Although Hommerbocker's opening sentence of this section asks the court to dismiss the complaint, the section concludes with a request for entry of summary judgment in her favor.  (*Id.* at 15.)  Because this is a motion for summary judgment, the court will consider this argument under the summary judgment standard.

(Doc. 226-5, p. 15.)  From the plain text of this release, Hommerbocker, as seller, is released from all claims except those claiming she defaulted under the contract or violated the seller disclosure law.  Niblett has not argued that Hommerbocker defaulted under the contract.  Further, the court previously dismissed with prejudice the Real Estate Seller Disclosure Law claim pleaded against Hommerbocker.  (Doc. 126.)  Accordingly, pursuant to the release provision in the standard sale agreement, Hommerbocker has been released from the fraud claims against her.  The court will grant Hommerbocker's motion for summary judgment and enter judgment in favor of Hommerbocker accordingly.

## B. eXp Defendants' Motion for Summary Judgment

Niblett raises UTPCPL, fraud, fraudulent concealment, fraudulent inducement, and concert of action claims against all eXp Defendants.  (Doc. 72.)  eXp Defendants move for partial summary judgment regarding damages on the UTPCPL claims and total summary judgment on the fraud claims.  (Doc. 227, pp. 2, 3.)  The court begins with the fraud-based claims.

### 1. Fraud-Based Claims

eXp Defendants argue that "[s]ince Niblett has not suffered any actual pecuniary injury, she cannot establish any of her fraud-based common law claims[.]"  (Doc. 227, p. 11.)  In opposition, Niblett points to her "Exhibit 16," which purports to be a list of the damages she suffered in this case, concluding

with an "actual loss" of $ 263,22.11.  (Doc. 231-16.)  The list includes costs such as fees for mediation, moving expenses, paint, estimates to engineer Jeff Fertich, "repairs," taxes, closing costs, attorney's fees to Attorney Gerace, closing fees, and outstanding income tax.  (*Id.*)  This document is not a sworn affidavit and there are no underlying documents to support any of the costs listed in Exhibit 16.  As a further category of damage, Niblett also argues that "Plaintiff's car insurance rose from $82 per month to $172 per month for the years since her 800 stellar credit score was ruined."  (Doc. 233, p. 15.)  Niblett does not provide documentary evidence of this assertion.

eXp Defendants reply that Niblett has not identified any facts of record supporting her claims of loss, and additionally argue that Niblett "cites alleged evidence of loss that was not provided during discovery, is hearsay, or appears to have been manufactured by her counsel."  (Doc. 239, p. 3.)  eXp Defendants then explain why the four pieces of evidence Niblett relies upon cannot support her claim for damages.  First, eXp Defendants argue that the Fertich report was not disclosed during expert discovery and is also hearsay "insofar as Plaintiff offers it for the truth of the matters asserted therein."  (*Id.* at 5, 6.)  Second, eXp Defendants also disregard Niblett's offer to sell them the property as it is an "attempted use of her settlement offer as evidence of an ascertainable loss[,]" and thus, inadmissible under Federal Rule of Evidence 408.  (*Id.* at 6.)  Third, eXp Defendants note that

Exhibit 16 is "some sort of revision–never provided in discovery or elsewhere in this case–of a damages calculation Plaintiff provided to Magistrate Judge Schwab on May 6, 2024, as part of a Court-annexed settlement effort." (*Id.* at 7.) Fourth and finally, eXp Defendants note that the purported email between Plaintiff's counsel and the USDA is merely Attorney Gerace's recounting of a conversation with the USDA as to "whether the promissory note signed by Plaintiff was forgiven when her USDA-backed mortgage on the Property was also forgiven[,]" and is hearsay offered for the truth of the matter asserted therein. (*Id.* at 8.)

> A fraud claim under Pennsylvania law consists of six elements:
>
> (1) (a) A misrepresentation or (b) A concealment; (2) Which is material to the transaction at hand; (3) (a) Made with knowledge of its falsity or recklessness as to whether it is true or false (for a misrepresentation), or (b) Calculated to deceive (for a concealment); (4) With the intent of misleading another into relying on it; (5) Justifiable reliance on the misrepresentation; and (6) A resulting injury proximately caused by such reliance.

*SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022).

Additionally, "a claim for fraudulent inducement requires proof of the six elements and is available when a person under no duty to enter a contract was deceived into doing so." *Id.* In order to determine whether a misrepresentation made by a defendant proximately caused Niblett an injury, "[t]he court must ascertain whether a defendant's acts or omissions were a 'substantial factor' in bringing

about the plaintiff's harm." *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009).

Niblett's fraud claims fail because she has failed to create a genuine issue of material fact as to how eXp Defendants' misrepresentations caused her injury. To begin, eXp Defendants have provided evidence that Niblett has not suffered actual financial injury. It is undisputed that Niblett paid only $0.25 down at closing and made only $27,045.14 in mortgage payments. (Doc. 231, ¶¶ 19, 20.) Further, eXp Defendants have provided evidence that the mortgage Niblett took out on the property was satisfied and she owes nothing further on the loan. (Docs. 221-11, 221-12.) Additionally, eXp Defendants have shown that Niblett sold the property for $70,822.01. (Doc. 221-10.) Thus, eXp Defendants have shown that Niblett has made a profit of $36,348.14 on the transaction.

Niblett fails to create a genuine issue of material fact on this issue. The only evidence Niblett has identified to show that she has suffered an injury by virtue of a misrepresentation on the part of eXp Defendants is her Exhibit 16 and Doc. 231-13, which purports to be an email between her counsel and a representative from the USDA. (Docs. 213-16, 231-13.) The court will discuss each in turn and why they do not create a genuine issue of material fact as to the issue of causation.

Regarding Exhibit 16, it appears to be a list of damages Niblett believes that she incurred by virtue of her involvement with the property. However, the list fails

to connect each line item of purported "damage" to a misrepresentation by any Defendant and fails to explain how the misrepresentation caused Niblett this damage. Niblett does not provide this connection in her briefing either. Further, Niblett has not provided documentary evidence to support any amount of damage for each line item in Exhibit 16. Finally, eXp Defendants' counsel states that this list of damages was not provided in discovery. A computation of each category of damages is a required disclosure under Federal Rule of Civil Procedure 26(a)(1)(A)(iii). For all of these reasons, Exhibit 16 fails to create a genuine issue of material fact regarding whether any eXp Defendant caused any damage to Niblett by virtue of a purported misrepresentation.

Next, Niblett relies on Doc. 231-13 for the proposition that she still owes money on the initial note issued by the USDA. (Doc. 235, pp. 9, 10.) Doc. 231-13 purports to be an email between Niblett's counsel and a representative of the USDA, and in its entirety provide:

> Dear Ms. Buckner: Thank you for your kind help. As we discussed today, I represent Melisa Niblett in the civil action filed in the United States District Court for the Middle District of Pennsylvania entitled Niblett v EXP at al., Civil Action No. 21-01345 (JPW). As we discussed, Freedom Mortgage issued a "Satisfaction of Mortgage" on the property and subsequently issued to Ms. Niblett the attached Form 1099-C "Cancellation of Debt" in the amount of $86, 252.91. Because the original mortgage and promissory note was approximately $194,500 it appears that there remains approximately $108,248 in unforgiven or unpaid debt for which Ms. Niblett is personally obligated to pay under the promissory note.

> From our conversation, I understand that a copy of the promissory note exists but not the original. For the benefit of all involved, my client in particular, I respectfully ask if you can produce a copy of the note marked satisfied along with an affidavit supporting the satisfaction, and state the amount which remains outstanding (if any).
>
> For any amount which has been forgiven, I also request that you declare that amount that has been forgiven and for which another Form 1099-C "Cancellation of Debt" shall be issued and in what amount so that my client can account for the income tax due.
>
> Again, thank you so much for your kind help.

First and foremost, on its face, this email does not show that Niblett still remains obligated under the promissory note. Rather, it shows that her counsel anticipates the remaining outstanding balance would be forgiven. Notwithstanding counsel's misunderstanding of his own email, this email contains multiple levels of hearsay. First, Niblett's counsel's out of court statement is offered for the truth that she still owes money on the promissory note. Second, there is Niblett's counsel's recounting of a conversation with another person, which took place out of court, offered for the truth that she still owes money on the promissory note. Niblett has not identified any exception applicable to this layers of hearsay. For all of these reasons, this document also does not create a genuine dispute of material fact as to any injury caused by eXp Defendants.

Accordingly, Niblett has failed to create a genuine issue of material act as to whether the eXp Defendants caused an injury to Niblett, where she has recovered any costs she spent on the sale of the house and has not connected any other costs

incurred to the purported misrepresentations made by eXp Defendants.[9]

Accordingly, eXp Defendants are entitled to summary judgment on the fraud-based claims.

eXp Defendants are also entitled to summary judgment as a matter of law on the concert of action claims, as Niblett has failed to prove the underlying tort of fraud. The Pennsylvania Supreme Court has adopted the "concert of action" theory of liability as provided by the Restatement (Second) of Torts. *Skipworth by Williams v. Lead Indus. Ass'n Inc.*, 690 A.2d 169, 173-74 (Pa. 1997). Section 876 of the Restate (Second) of Torts provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

---

[9] For the sake of completeness, the court also notes that Niblett claims she suffered damages as a result of her credit score lowering. She has failed to connect this injury to a misrepresentation made by Defendants and has not provided any documentary evidence regarding her credit score to the court. Accordingly, for the same reasons as above, this does not create a genuine issue of material fact as to the issue of injury.

Further, "[t]he plain language of § 876(a) indicates that a concert of action claim will lie only if both persons who are alleged to have acted in concert each committed a tortious act." *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F.Supp.2d 400, 412 (W.D. Pa. 2002). As the court has found Niblett has not created a genuine dispute of material fact as to her fraud claim, she cannot recover on a concert of action claim, which necessarily requires tortious conduct. Accordingly, eXp Defendants are also entitled to summary judgment on the concert of action claim, and their motions for summary judgment will be granted regarding all of the state law tort claims against them.

### 2. UTPCPL[10]

eXp Defendants ask the court to enter partial summary judgment on Niblett's UTPCPL claim and hold that, if Niblett is successful on the merits of her claim at trial, she is only entitled to $100 because she has not suffered actual damages. (Doc. 227, p. 8.) eXp Defendants argue that Niblett paid $27,045.14 in mortgage payments, sold the property for $70,822.01, and her mortgage was then

---

[10] It is unclear whether the UTPCPL claim applies to Hommerbocker or just the eXp Defendants. Niblett appears to believe that by pleading a "concert of action" count she has pleaded a UTPCPL claim against Hommerbocker. In fact, Niblett's brief in opposition to Hommerbocker's motion for summary judgment exclusively contains argument regarding damages under the UTPCPL. However, the amended complaint does not list Hommerbocker as a defendant on the UTPCPL claim. Additionally, the concert of action claim vaguely references the "tortious acts" of the other Defendants, not their statutory violations. Accordingly, the amended complaint does not allege a UTPCPL claim against Hommerbocker and she is not included in this discussion.

released by the USDA and the balance of the mortgage note forgiven.  (*Id.*)

Therefore, because Niblett has not suffered actual damages, she should only

recover $100.  (*Id.*)

Niblett responds that the UTPCPL is a remedial statute, which is to be

construed liberally, and points to case law showing that "ascertainable loss" can be

very small in these types of cases.  (Doc. 235, pp. 12–15.)  Niblett also argues that

there is a genuine issue of material facts as to actual damages when comparing the

numbers offered by eXp Defendants and her list of damages in Exhibit 16.  (*Id.* at

15.)  In reply, eXp Defendants offer the same evidentiary arguments discussed

above as to why Niblett has failed to show a genuine issue of material fact.  (Doc.

239, pp. 4–10.)

The UTPCPL prohibits "unfair methods of competition" and "unfair or

deceptive acts or practices" in the conduct of trade or commerce.  *Hunt v. U.S.

Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008) (citations omitted).  The statute

creates a private right of action for those who sustain an "ascertainable loss" due to

the prohibited acts or practices of others.  *Id.*  In pertinent part, the so-called

"catchall provision" provides

> Any person who purchases or leases goods or services primarily for
> personal, family or household purposes and thereby suffers any
> ascertainable loss of money or property, real or personal, as a result of
> the use or employment by any person of a method, act or practice
> declared unlawful by section 3 of this act, may bring a private action to

recover actual damages or one hundred dollars ($100), whichever is greater.

73 PA. STAT. § 201-9.2.  To state a claim for relief under the UTPCPL's catch-all provision, a plaintiff must allege "(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *McDonough v. State Farm Fire & Cas. Co.*, 365 F. Supp. 3d 552, 562 (E.D. Pa. 2019) (quoting *Hall v. Equifax Info. Servs. LLC*, 204 F. Supp. 3d 807, 810 (E.D. Pa. 2016)).

The Pennsylvania Supreme Court has not defined "ascertainable loss" in the context of the UTPCPL, however, "courts require that the loss asserted be 'an actual, non-speculative, loss of money or property." *Hall v. Equifax Info. Servs. LLC*, 204 F.Supp.3d 807, 812 (E.D. Pa. 2016).  Thus, "[a] plaintiff must be able to point to money or property that he would have had but for the defendant's fraudulent actions." *Benner v. Bank of Am., N.A.*, 917 F.Supp.2d 338, 360 (E.D. Pa. 2013).  Additionally, "emotional distress damages are not included in the term 'actual damages,' for the purposes of the UTPCPL, reasoning that recovery for emotional distress damages does not fall within the express limitations of 73 P.S. § 201-9.2, which only recognizes as actual damages 'any ascertainable loss of money or property.'" *In re Marshall*, 613 B.R. 194, 218–19 (E.D. Pa. 2020) (citations

omitted).  Further, legal fees are not considered ascertainable losses.  *Grimes v. Enterprise Leasing Co. of Phila., LLC.*, 105 A.3d 1188, 1193 (Pa. 2014).

As explained by Defendants, Niblett has failed to show that she has suffered any loss at all on this transaction.  In fact, she has obtained a profit.  Accordingly, the court will grant partial summary judgment in favor eXp Defendants and hold that Niblett is only entitled to $100 damages should she prevail at trial on her UTPCPL claim.[11]

## CONCLUSION

For the reasons above, the court grants both Hommerbocker and eXp Defendants' motions for summary judgment.  An order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 29, 2025

---

[11] The court notes that the UTPCPL does not contain a right to a jury trial.  *Fazio v. Guardian Life Ins. Co. of America*, 62 A.3d 396, 411 (Pa. Super. 2012).