**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MELISSA A. NIBLETT, | : | Civil No. 1:21-CV-01345 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EXP REALTY, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### <u>MEMORANDUM</u>

This matter is before the court on Plaintiff Melissa A. Niblett's motion to alter or amend the court's July 29, 2025 order, Doc. 242, pursuant to Federal Rule of Civil Procedure 59(e) or in the alternative for interlocutory appeal ("motion for reconsideration"). (Doc. 245.) For the reasons that follow, the court will deny Niblett's motion for reconsideration.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Niblett purchased a townhome from Defendant Jennifer Hommerbocker ("Hommerbocker") in 2019. (Doc. 241, p. 2.)[1] In this real estate transaction, eXp Realty, LLC ("eXp") agent Colin Cameron ("Cameron") represented Niblett, and agent Laury O'Neill ("O'Neill") represented Hommerbocker. (*Id.*) Nicole

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header. Moreover, in this memorandum opinion, the court includes only a brief recitation of the facts of this case for the purpose of resolving Niblett's motion for reconsideration. A more detailed recitation of the facts and claims of this case, and the parties' disputes about those facts, are set forth in the court's memorandum opinion granting Defendants eXP Realty, LLC, Colin Cameron, Nicole Butcher, Laurey O'Neill, and Jennifer Hommerbocker's motions for partial summary judgment and summary judgment. (Doc. 241, pp. 2–11.)

Butcher ("Butcher"), another eXp agent, accompanied Niblett on a walkthrough of the town home. (*Id.*)[2]  Niblett avers that the eXp agents are dual agents of both Niblett and Hommerbocker. (*Id.*)  Niblett alleges that Hommerbocker learned of problems with the townhome's backfilling, did not adequately address those problems, and together with the eXp Defendants, failed to inform her of those problems before she bought the townhome. (*See id.* at 3.)

Niblett's amended complaint contains eight claims. (Doc. 72, ¶¶ 145–216.) When Defendants filed their motions for summary judgment, five claims remained. (Doc. 241, p. 10.)  In those remaining claims, Niblett alleged that eXp, Cameron, Butcher, and O'Neill violated the Pennsylvania Unfair Trade Practices and Consumer Protections Law ("UTPCPL"), 73 P.S. § 201-1–201-10, and brought state law fraud, fraudulent concealment, fraudulent inducement, and concert of action claims against all defendants. (Doc. 241, p. 10.)

eXp, Cameron, and Butcher filed a partial motion for summary judgment, and O'Neill joined that motion. (Docs. 221 & 222.)  Hommerbocker filed a separate motion for summary judgment. (Doc. 224.)[3]  The court granted both motions and ordered that final judgment in favor of the eXp Defendants and

---

[2] The court refers to Butcher, Cameron, O'Neill and eXp itself as, collectively, "the eXp Defendants."  The court refers to the eXp Defendants and Hommerbocker, collectively, as "Defendants."

[3] The court refers to these motions, collectively, as the "motions for summary judgment."

Hommerbocker on Niblett's state law fraud, fraudulent concealment, fraudulent inducement, and concert of action claims will be entered at the conclusion of the case. (Doc. 242, pp. 1–2.) The court also held that should Niblett recover on her UTPCPL claim at trial, her damages will be limited to $100. (Doc. 241, p. 26; Doc. 242, p. 2.)

Niblett filed the motion for reconsideration on August 26, 2025. (Doc. 245, p. 1.) Therein, she requests "reconsideration, oral argument, and [] vacatur of the orders granting summary judgment to the defendants, or, in the alternative, certification to the Third Circuit for interlocutory appeal . . . ." (*Id.* at 1–2.) She filed an accompanying brief in support on September 9, 2025. (Doc. 249.)

eXp, Cameron, and Butcher filed a brief in opposition to the motion for reconsideration on September 23, 2025. (Doc. 253.) Hommerbocker filed a separate brief in opposition the same day. (Doc. 254.) Niblett filed a reply on October 7, 2025. (Doc. 256.) Therefore, the motion is ripe for disposition.

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. § 1332 because the parties have complete diversity and the amount in controversy exceeds $75,000.[4] Venue is

---

[4] Niblett is a Maryland Citizen, Cameron, Butcher, O'Neill and Hommerbocker are Pennsylvania Citizens, and eXp is located in Pennsylvania. (Doc. 72, ¶¶ 1–3.)

appropriate under 28 U.S.C. § 1391 because all acts or omissions giving rise to the claims occurred in the Middle District of Pennsylvania.

STANDARD OF REVIEW

Niblett's motion for reconsideration requests that the court either alter its order pursuant to Federal Rule of Civil Procedure 59(e) or, in the alternative, certify the issues she presents for interlocutory appeal.  (Doc. 245, pp. 1–2.)  The court addresses the legal standards applicable to Niblett's two requests in turn.

**A. The court may not grant Niblett relief pursuant to Federal Rule of Civil Procedure 59(e).**

Federal Rule of Civil Procedure 59(e) states that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Rule 54(a) defines the term "judgment" as "a decree and any order from which an appeal lies."  Rule 54(b) states that:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The court's July 29, 2025 order did not adjudicate all of the claims in this case. (Doc. 242, p. 2 ("The only remaining claim in this case is the UTPCPL claim

against eXp Realty, Colin Cameron, Nicole Butcher, and Laury O'Neill.").)  And the court did not enter final judgment as to any of the claims the order adjudicated. (*Id.* ("Final judgment in favor of all defendants on Counts II through V shall be entered at the conclusion of this case in accordance with the Federal Rules of Civil Procedure."))  "Partial summary judgment orders are interlocutory decisions," so "a party against whom summary judgment was entered as to less than all claims against all parties may not seek relief under Rule 59(e)." *Azer Sci. Inc. v. Quidel Corp.*, No. 5:21-CV-02972, 2023 WL 289696, at *2 (E.D. Pa. Jan. 18, 2023) (quoting *Robinson v. Fair Acres Geriatric Ctr.*, No. CV 15-06749, 2020 WL 1313721, at *15 (E.D. Pa. Mar. 20, 2020), *aff'd*, 842 F. App'x 779 (3d Cir. 2021)). Therefore, the court may not grant Niblett's requested relief pursuant to Rule 59(e).

### B. The court construes Niblett's motion for reconsideration to be brought pursuant to Federal Rule of Civil Procedure 54(b).

Contrary to Rule 59(e), Rule 54(b), allows the court to "revise[]" any order or judgment that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" in a case "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Accordingly, a party may move for reconsideration of a court's interlocutory order pursuant to Rule 54(b) any time before the court enters final judgment on all the claims pending in the case. *In re Anthanassious*, 418 F. App'x 91, 95 (3d Cir. 2011)

5

(recognizing that a trial court could reconsider an interlocutory order pursuant to Federal Rule of Civil Procedure 54(b)); *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) ("The court reaffirms the better-reasoned view that motions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b).")  In the interest of efficiency, the court will consider Niblett's motion for reconsideration to be brought under Rule 54(b) and will address the merits of the arguments she presents.[5]

A district court may reconsider an interlocutory order "even if the movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or 'the

---

[5] Hommerbocker argues that, because Rule 59(e) does not apply to Niblett's motion, the motion is untimely.  (Doc. 254, pp. 6–8.)  Middle District of Pennsylvania Local Rule 7.10 states that "[a]ny motion for reconsideration or reargument must be . . . filed within fourteen (14) days after the entry of the order concerned.  This rule is not applicable to a motion to alter or amend a judgment under Fed. R. Civ. P. 59."  But the plain text of Rule 54(b) permits the court to alter its interlocutory orders "at any time" before the entry of final judgment on all claims.  When the Federal Rules of Civil Procedure conflict with a court's local rules, the former take precedence. *Milesco v. Norfolk S. Corp.*, No. 1:09-CV-1233, 2010 WL 11714013, at *7 (M.D. Pa. Aug. 18, 2010) ("When court orders or local rules conflict with the mandates of the Federal Rules of Civil Procedure, the latter must triumph") (citing *Lasky v. Cont'l Prod. Corp.* 804 F.2d 250, 255 (3d Cir. 1986)).   Therefore, the court finds that Niblett's motion is timely when construed as a motion for reconsideration pursuant to Federal Rule 54(b). *Harding v. Jacoby & Meyers, LLP*, No. CV 14-5419, 2021 WL 2472323, at *1 (D.N.J. June 16, 2021) (Finding that a Rule 54(b) motion for reconsideration was not restricted to the time limits for motions for reconsideration set by the court's local rules).

need to correct a clear error of law or fact or to prevent manifest injustice.'"

*Qazizadeh*, 214 F. Supp. 3d at 295 (quoting *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).[6] "Instead, the court may permit reconsideration whenever consonant with justice to do so." *Id.* (quoting *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 472 F. Supp. 2d 630, 632 (M.D. Pa. 2007)) (internal quotation marks omitted).

Nonetheless, a trial court must exercise the discretion Rule 54 grants "in a responsible way, both procedurally and substantively," and "[e]ffective trial court management requires a presumption against reconsideration of interlocutory decisions." *Anthanassious*, 418 F. App'x at 95–96. The movant must show good cause for reconsidering the prior decision, and good cause is not shown by rearguing points already made or presenting new arguments or evidence that could have been raised before the court entered the decision at issue. *Qazizadeh*, 214 F. Supp. 3d at 295–96; *Stockton v. Wetzel*, No. 1:16-CV-00613, 2023 WL 5751409, at *2 (M.D. Pa. Sept. 6, 2023). Overall, a motion for reconsideration "should not be used to try to get a 'second bite at the apple . . . .'" *Qazizadeh*, 214 F. Supp. 3d

---

[6] The court may still look to these factors for guidance, even though they are not binding, in considering Niblett's Rule 54(b) motion. *Wells v. Houston*, No. 2:22-CV-01641, 2024 WL 4591445, at *2 (W.D. Pa. Oct. 28, 2024) (quoting *Nyamekye v. Mitsubishi Elec. Power Prods., Inc.*, No. CV 17-852, 2018 WL 3933504, at *3 (W.D. Pa. Aug. 16, 2018)).

at 295 (quoting *Kropa v. Cabot Oil & Gas Corp.*, 716 F. Supp. 2d 375, 378 (M.D. Pa. 2010)).[7]

### C. 28 U.S.C. § 1292(b) governs Niblett's request to certify the court's partial summary judgment rulings for interlocutory appeal.

A district court may certify an order for appeal if the court finds that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Thus, certification under § 1292(b) is only proper when "(1) the issue involve[s] a controlling question of law; (2) as to which there are substantial grounds for difference of opinion; and (3) an immediate appeal of the order may materially advance the ultimate termination of the litigation." *Simon v. United States*, 341 F.3d 193, 199 (3d Cir. 2003). The party seeking a certificate of appealability bears the burden of showing that the certificate should issue. *Consumer Fin. Protection Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 113 (M.D. Pa. Feb. 26, 2021) (citing *Orson Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 320 (E.D. Pa. 1994)).

---

[7] *See also Nyamekye*, 2018 WL 3933504, at *3 ("In discussing the scope of a district court's discretion to reconsider an interlocutory decision, the Third Circuit Court of Appeals has explained that while 'a court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance . . . as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice'") (quoting *In re Pharmacy Benefit Managers*, 582 F.3d 432, 439 (3d Cir. 2009)).

## DISCUSSION

Niblett argues that the court's memorandum opinion and order granting the eXp Defendants' motions for partial summary judgment and Hommerbocker's motion for summary judgment "appear, generally, clearly erroneous, in some cases manifestly unjust, as well as in contravention of the summary judgment standards, and finally, in some instances, in direct contravention of controlling law."  (Doc. 245, p. 1.)  After discussing Niblett's arguments, the court will specifically address several ethically problematic assertions made by counsel in briefing Niblett's motion.

### A. Niblett's arguments in support of her motion for reconsideration

Niblett identifies several specific points in the court's reasoning that she argues justify reconsideration.  (*Id.* at 2–14.)  The court addresses each in turn.

**1. Niblett has not presented a valid reason to reconsider the court's refusal to consider the "preliminary statements" Niblett included in her responses to defendants' statements of material fact.**

Niblett filed a separate response to each of the two statements of fact Defendants filed.  (Docs. 231 & 232.)  She included a "preliminary statement" in both responses.  (Doc. 231, pp. 1–18; Doc. 232, pp. 1–6.)  The preliminary statements are not identical, but they both precede Niblett's specific responses to Defendants' respective statements of material fact.

The court expressly declined to consider Niblett's preliminary statements when analyzing the motions for summary judgment.  (Doc. 241, p. 2 n.1.)  It found that the preliminary statements "outline[] the factual scenario in a narrative format and make[] legal argument," and that because "this is contrary to this court's Local Rules, the court will not consider the preliminary statement and will consider only [Niblett's] responses to Defendants' numbered statement of facts."  (*Id.* (citing M.D. Pa. L.R. 56.1.)  Niblett argues that the court improperly refused to consider her preliminary statements because: her paragraph-numbered answers incorporated the statements; the court may consider any materials in the record when deciding a motion for summary judgment; and her responses to Defendants' statements of material fact are not briefs, they could incorporate other materials by reference. (Doc. 245, pp. 3–4; Doc. 249, pp. 6–10.)  She claims that the court's refusal to consider her preliminary statements deprived her of a complete and fair analysis of the question of whether a dispute of material fact existed.  (Doc. 249, pp. 8–9.)

Local Rule 56.1 states, in relevant part, that:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

Niblett's preliminary statements do not respond to the numbered paragraphs set forth in Defendants' statements of material fact; they present her understanding of the factual issues in the case in narrative form. (Doc. 231, pp. 1–18; Doc. 232, pp. 1–6.) Additionally, they frequently veer into argument about whether a dispute of material fact exists in violation of the rule's request for "a short and concise statement of the material facts." M.D. Pa. L.R. 56.1; (*see, e.g.,* Doc. 231, p. 18 ("Thus, Defendants frantic argument that even if there were concealed latent material defects, Plaintiff suffered no damages, is as false as the argument they abandoned. Accordingly, there are no grounds to grant any of the defendants summary judgment"); Doc. 232, p. 6 ("One or all of the defendants have lied about concealing material defects from Plaintiff leaving no doubt that material defects were concealed in violation of the UTPCPL and the common law.") Allowing Niblett to circumvent Local Rule 56.1 by simply "incorporate[ing]" an improperly formatted and separate section into her response to Defendants' statements of material fact would make the rule's requirements obsolete. (Doc. 249, p. 7.)

Moreover, the Third Circuit recognized, in a case Niblett cites, that "the District Court is in the best position to determine the extent of a party's noncompliance with [M.D. Pa.] Local Rule 56.1, as well as the appropriate sanction for such noncompliance." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018); (Doc. 249, p. 8.) In that case, the court found "no error" in the

11

district court's summary judgment analysis because the district court "fully addressed plaintiffs' factual allegations" and the plaintiffs failed to identify any prejudicial error. *Weitzner*, 909 F.3d at 614 & 614 n.12. Here, the court considered Niblett's responses to the numbered paragraphs in Defendants' statements of material fact as well as her briefs in opposition. (Doc. 241, p. 2 n.1.) Moreover, Niblett claims that the court's "analysis failed to include (inter alia) the following and other dispositive facts," but merely excerpts a deposition transcript without explaining why that excerpt would have been dispositive to the court's ruling. (Doc. 249, p. 9.) For these reasons, the court's application of Local Rule 56.1 does not give cause to revisit its July 29, 2025 order. (Doc. 242, pp. 1–2.)

### 2. Niblett has not presented a valid reason to reconsider the court's conclusion that Niblett could recover no more than $100 on her UTPCPL claim.

Niblett argues that, "where a trial court caps [UTPCPL] damages at $100 pretrial, no matter what Plaintiff may prove at trial," the legislative intent of the UTPCPL is "undermined," so the court should reconsider its order. (Doc. 249, p. 10.) Niblett relies on the Supreme Court of Pennsylvania's holding in *Dwyer v. Ameriprise Financial, Inc.*, 313 A.3d 969, 973 (Pa. 2024), to make this argument. (Doc. 249, p. 12 ("Because this ruling is so obviously without consideration of legislative intent and the *Dwyer* decision, reconsideration is necessary.").)

12

Niblett made an almost identical argument, and cited *Dwyer*, in her briefs in opposition to Defendants' motions for partial summary judgment and summary judgment.  (Doc. 235, p. 13) ("Even more useful, the High Court directs the trial court to follow a legislative and judicial philosophy that 'benefits the public at large by eradicating' fraudulent acts or practices by sellers.") (quoting *Dwyer*, 313 A.3d at 978).  The court considered this argument and found it unpersuasive. (Doc. 241, p. 24 ("Niblett responds that the UTPCPL is a remedial statute, which is to be construed liberally, and points to case law showing that 'ascertainable loss' can be very small in these types of cases.")

"Whether involving a final or interlocutory order, a motion for reconsideration is 'not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant.'" *Qazizadeh*, 214 F. Supp. 3d at 295 (quoting *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002).)  Therefore, Niblett's UTPCPL legislative purpose argument does not demonstrate cause to reconsider the court's July 29, 2025 order.  (Doc. 242, pp. 1–2.)

### 3. Niblett has not presented a valid reason to reconsider the court's treatment of the parties' dual agency agreement.

Niblett's motion for reconsideration presents multiple arguments about the "Dual Agency Addendum" she executed with Hommerbocker and its effect on the court's holding.  (Doc. 245, pp. 6–8; Doc. 249, pp. 12–15.)  It is not clear to the

13

court whether Niblett argues that the court should have considered the dual agency addendum's impact on the obligations of Hommerbocker, the eXp Defendants, or both.  Accordingly, the court addresses the dual agency addendum's potential application to the court's adjudication of both Hommerbocker and the eXp Defendants' motions for summary judgment.

In her brief in support of her motion for summary judgment, Hommerbocker argued that "[t]he release language contained in the Standard Agreement of Sale precludes any claims by Plaintiff [against] Defendant Hommerbocker stemming from the sale of the property." (Doc. 228, pp. 14–15.)  Niblett did not address this argument.  (Doc. 236 pp. 1–17; Doc. 241, p. 15 ("Niblett does not respond to any of these arguments.").)  The dual agency addendum was available to Niblett before she filed her brief in opposition to Hommerbocker's motion for summary judgment.  (Doc. 234-6, p. 2.)  A motion for reconsideration should not be used "to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question . . . ." *Qazizadeh*, 214 F. Supp. 3d at 295–96 (citing *McDowell Oil Serv., Inc. v. Interstate Fire & Cas. Co.*, 817 F. Supp. 538, 541 (M.D. Pa. 1993)).  Therefore, Niblett's invocation of the dual agency addendum does not give cause to alter the court's ruling on Hommerbocker's motion for summary judgment.

As for the eXp Defendants, Niblett generally argues that they are "liable for concealing and/or withholding the disclosure of latent defects under the Dual Agency Addendum" and "on Plaintiff's common law fraud claims." (Doc. 249, pp. 13–15; *see* Doc. 256, pp. 16–21.) The court granted the eXp Defendants' motion for partial summary judgment because Niblett did not present evidence sufficient to create a dispute of material fact about the damages she suffered as a result of the eXp Defendants' alleged misrepresentations. (Doc. 241, pp. 21–22, 26.) Niblett's argument about the dual agency addendum in her motion for reconsideration does not address the damages she allegedly suffered because of the eXp Defendants' alleged misrepresentations. (Doc. 245, pp. 6–8; Doc. 249, pp. 12–15 ("These real estate agents all had actual knowledge of a material defect that was not disclosed to Plaintiff"); Doc. 256, pp. 16–21.) Accordingly, the dual agency addendum does not provide cause to revisit the court's decision to grant the eXp Defendants' motion for summary judgment. (Doc. 242, pp. 1–2.)

### 4. Niblett has not presented a valid reason to reconsider any determination made by the court regarding Hommerbocker's credibility.

Niblett argues that the court made an impermissible credibility determination in its summary judgment analysis by labelling Hommerbocker's testimony as "honest" or "honestly stated." (Doc. 245, pp. 8–9; Doc. 249, pp. 15–16.) In its memorandum opinion, the court noted that "Hommerbocker contends she honestly

15

believed the repairs on her side of the home were completed." (Doc. 241, p. 4.) This is not a credibility determination; it is a description of a party's assertion. In the next sentence, the court notes that "Niblett contends that Hommerbocker knew the repairs were not completed on her side due to her taking a settlement and emailing the RWC report to O'Neill shortly before the completion of the sale to Niblett." (*Id.*)

On the next page of its memorandum opinion, the court noted that Hommerbocker "did not explain what these issues were in the section provided to do so and claims she 'honestly must have missed that section[.]'" (*Id.* at 5.) The phrase "honestly must have missed that section" is surrounded by quotation marks in the opinion because it is a quotation from the parties' statements of facts. (Doc. 232, p. 21.) This is also not a credibility determination. Therefore, Niblett fails to show cause for reconsideration of the court's July 29, 2025 order. (Doc. 242, pp. 1–2.)

### 5. Niblett has not presented a valid reason to reconsider the court's conclusion that Niblett profited from the sale of the townhome.

Niblett argues that she still owes a balance on the promissory note she executed before purchasing the townhome as demonstrated by the 1099-C form she received, and the court improperly refused to consider evidence of that outstanding balance or the taxes Niblett owes on any forgiven debt. (Doc. 245, pp. 9–11; Doc.

249, pp. 17–18; Doc. 256 p. 9.)  Had the court considered this evidence, she argues, it would not have found that Defendants presented evidence demonstrating that she made a profit of $36,348.14 when she ultimately sold the townhome.  (*Id.*)

Niblett described the 1099-C form and stated that taxes are due on her cancelled debt in the "counter statement of the case" sections of her briefs in opposition to Defendants' motions for summary judgment.  (Doc. 235, p. 9; Doc. 236, pp. 9–10.)  However, in the argument section of her briefs, Niblett cited only to her Exhibit 16, which she described as a "list of ascertainable damages" after a discussion of caselaw.  (Doc. 235, pp. 11–16 ("Whether there is a genuine issue of material fact as to actual damages is easily resolved by comparing the feeble arguments of the EXP Defendants to the itemized list of ascertainable damages Plaintiff has provided"); Doc. 236, pp. 11–17.)

Niblett did not argue the materiality of the 1099-C form or point to evidence demonstrating any specific tax liability in the argument section of either brief in opposition.  (*See id.*)  If the party moving for summary judgment meets its burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact," then the burden shifts to the nonmoving party to "go beyond the pleadings and come forward with specific facts showing that there is a *genuine issue for trial.*"  *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) and then quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))

(internal quotation marks omitted). "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by [] citing to particular parts of

materials in the record . . . or showing that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

Niblett cited only her Exhibit 16 in arguing that a dispute of material fact

existed, not the 1099-C or other unidentified evidence demonstrating the tax

consequences of her loan. (Doc. 235, pp. 11–16; Doc. 236, pp. 11–17.) For the

reasons explained in the memorandum opinion, the court found that the portion of

the record Niblett cited did not create a genuine dispute of material fact. (Doc.

241, pp. 19–23.) Moreover, nothing prevent Niblett from arguing that the 1099-C

or other unidentified evidence about tax liability created a dispute of material fact

in her briefs in opposition to the motions for summary judgment. She did not.

(Doc. 235, pp. 11–16; Doc. 236, pp. 11–17.) Therefore, she fails to show cause for

the court to reconsider its July 29, 2025 order. *Qazizadeh*, 214 F. Supp. 3d at 295–

96.

### 6. Niblett's argument that the court's ruling turns Pennsylvania into a "buyer beware" state is not a reason to reconsider.

Niblett argues that the court should reconsider its order because "[t]he

answers provided by Plaintiff to the Defendants' summary judgment motions

show[], or at the very least, raise[] a genuine issue of material fact that Hommerbocker certainly knew about latent material defects on the property and so did O'Neill. Yet, neither . . . provide[d] that necessary and mandatory disclosure." (Doc. 245, p. 12–14; Doc. 249, pp. 18–20.) Accordingly, Niblett claims that the court's decision to grant summary judgment in Defendants' favor turns Pennsylvania into a "buyer beware state." (Doc. 249, p. 20.)

Niblett does not explain how this argument relates to: (1) The release contained in the seller's contract that shielded Hommerbocker from liability; or (2) Niblett's failure to prove that a dispute of material fact exists as to the extent of damages she suffered as a result of the Defendants' alleged acts. The court granted the motions for summary judgment on those grounds. (Doc. 241, pp. 14–26.) Therefore, this argument does not justify reconsideration of the court's July 29, 2025 order. (Doc. 242, pp. 1–2.)

> **7. Niblett has not presented a valid reason to reconsider the court's conclusion that some of her evidence was inadmissible hearsay.**

Niblett argues that the court improperly found that an email she cited as evidence of a disputed material fact contained "multiple levels of hearsay," Doc. 241, p. 21. (Doc. 256, pp. 6–21.) She claims that the court should have considered this evidence regardless of its status as hearsay because she could have ultimately presented it in an admissible form at trial. (*Id.* at 12–13.) It is true that "[i]n ruling

19

on a motion for summary judgment, the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial." *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). But as Niblett recognizes in her reply, "[t]he proponent need only explain the admissible form that is anticipated . . . In [*City of Camden*, 832 F.3d at 238], the Third Circuit held that all that was required to survive this aspect of a motion for summary judgment is that the proponent identify the declarant and note their ability to testify." (Doc. 256, pp. 12–13 (quoting *Zamichieli v. Andrews*, No. CV 12-3200, 2025 WL 1171594, at *2 (E.D. Pa. Apr. 22, 2025) (internal citations and quotation marks omitted)). Niblett does not identify where, in her briefs in opposition to Defendants' motions for summary judgment, she explained the admissible form in which her otherwise inadmissible evidence would be presented at trial, nor where she averred that the parties who made the hearsay statements would testify at trial. (Doc. 256, pp. 6–21.)[8]

Therefore, the court will not reconsider its July 29, 2025 order on these grounds.[9]

---

[8] Niblett claims that "as for damages, which Defendants also claim is all hearsay evidence, Plaintiff herself is the declarant of those damages and certainly available at her own trial." (Doc. 256, p. 13.) The court assumes Niblett refers to her Exhibit 16, "a list of damages Niblett believes that she incurred by virtue of her involvement with the property." (Doc. 241, pp. 19–20.) But the court found that Exhibit 16 did not create a dispute of material fact because it did not connect Niblett's alleged damages to Defendants' alleged misrepresentations, did not cite to supporting documentary evidence in the record, and was not provided during discovery, not because it was hearsay. (*Id.* at 19–20.)

[9] Niblett also argues that "the Court somehow wholly misconstrues the Fertich Report as a report produced for or by Plaintiff's expert, then blaming Plaintiff for failing to disclose it in

**8. The court will not certify the issues presented in Niblett's motion for reconsideration for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).**

Niblett argues that the court should certify the issues she presents in her motion for reconsideration for interlocutory appeal because they involve controlling questions of law "as to which there is a substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." (Doc. 249, p. 20 (quoting 28 U.S.C. § 1292(b).) The party seeking a certificate of appealability bears the burden of showing that the certificate should issue. *Consumer Fin. Protection Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 113 (M.D. Pa. 2021) (citing *Orson Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 320 (E.D. Pa. 1994)). Other than reciting the standard, Niblett does not explain how the issues she presents qualify as "controlling question[s] of law as to which there is substantial ground for difference of opinion" or how "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292. To the extent Niblett argues that the arguments she presents in favor of reconsideration also warrant an interlocutory appeal, the court finds that those arguments do not

---

discovery." (Doc. 256, pp. 15–16.) She explains that "Fertich is not Defendants expert. Fertich was employed by Freedom Mortgage to provide a report on the property to decide if it had any value or was worth repairing. Because the report convinced Freedom Mortgage the property had no value, Freedom Mortgage declared the mortgage lien valueless." (*Id.*) Again, Niblett fails to explain how this clarification impacts the court's ultimate rulings regarding the seller's release agreement and her failure to demonstrate disputed material facts about damages. (*Id.* at 14–16.)

21

identify a controlling question of law "as to which there is substantial ground for difference of opinion." *Id.*

### B. The court cautions Plaintiff's counsel regarding ethically problematic statements and allegations in Niblett's briefing.

Throughout the briefing in support of Niblett's motion for reconsideration, Plaintiff's counsel stated that the court is both incompetent and biased against Niblett or her attorney, Richard J. Gerace. For example, counsel wrote "that the court doubts counsel's contact and correspondence with the United States Department of Agriculture, LaTrice Buckner, Supervisory Management and Program Analyst, demonstrates an unexplainable bias against Plaintiff or counsel . . . ." (Doc. 245, p. 11.) Counsel accuses the court of "prejudging the outcome of trial whereby no matter what Plaintiff proves this Court has already decided that Plaintiff is not worthy of anything other than $100." (*Id.* at 6.) Counsel characterizes the court's ruling as "a cynical use of power in blatant violation of Plaintiff's right to trial . . . ." (Doc. 256, p. 10.) And at various points throughout her briefing, counsel claims that the court "suggests that Niblett was foolish," Doc. 245, p. 14, "apparently does not think the Plaintiff deserves the law's protection because she did not hire enough professionals or do enough to protect herself," Doc. 249, p. 19, "[takes] off on [a] delusion," Doc. 256, p. 15, and is generally unfair. Doc. 256, p. 16.

Concerned by these unsupported allegations of bias and gross mischaracterizations of the court's actual ruling, the court examined Attorney Gerace's disciplinary record as a member of the bar of the Commonwealth of Pennsylvania. The court found that the Disciplinary Board of the Supreme Court of Pennsylvania publicly reprimanded Attorney Gerace in 2023 for accusing another judge of bias in briefs he filed in support of a motion for summary judgment. *Office of Disciplinary Counsel v. Gerace*, No. 26 DB 2023 (Pa. D. Bd. Order Feb. 15, 2023) (explaining that Attorney Gerace alleged that the court "stepped over the line of impartiality to side with a criminal organization and the lawyers who lie to support that organization").

Local Rule 83.23.2 largely adopts the Rules of Professional Conduct of the Supreme Court of Pennsylvania. The Rules of Professional Conduct of the Supreme Court of Pennsylvania prevent a lawyer from making "a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ." Pa. RPC 8.2(a).

It is entirely appropriate for an attorney to move for reconsideration and to argue that a court has erred. It is also appropriate for an attorney to disagree with a court's analysis and to take an appeal based on that disagreement. However, it is not permitted by the governing ethical rules to accuse a court of bias without evidentiary support. If, in fact, a party has a good faith basis upon which to assert

23

that a court has a conflict or some perceived bias, then the party should file a

motion for recusal and state the evidence in support.  Moreover, frivolously

accusing a court of lacking integrity in a written submission to the court is a

serious matter that could give rise to disciplinary action, as demonstrated by the

2023 public reprimand suffered by Attorney Gerace.  The court strongly cautions

Attorney Gerace to provide supported legal arguments and factual statements

rather than *ad hominem* attacks against the court in future briefing.  Apart from this

warning, the court finds that no further action on this issue is currently necessary.

### CONCLUSION

For the reasons explained herein, Niblett's motion for reconsideration and

her request for a certificate of appealability will be denied.  An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 23, 2026